AIRPORT COMMISSION OF FORSYTH COUNTY, NORTH CAROLINA; Board of Commissioners, Forsyth County, North Carolina, and Winston-Salem Chamber of Commerce, Incorporated, Petitioners,

v.

CIVIL AERONAUTICS BOARD, Respondent,

Eastern Air Lines, Inc., United Air Lines, Inc., Greensboro-High Point Airport Authority, Intervenors.

No. 8484.

United States Court of Appeals Fourth Circuit.

Argued Jan. 12, 1962.

Decided Feb. 24, 1962.

I. Martin Leavitt, Washington, D. C., and H. Gardner Hudson, Winston-Salem, N. C. (Richard P. Taylor, Steptoe & Johnson, Washington, D. C., and Hudson, Ferrell, Petree, Stockton & Stockton, Winston-Salem, N. C., on brief), for petitioners.

Arthur R. Schor, Attorney, Civil Aeronautics Board, Washington, D. C. (Lee Loevinger, Asst. Atty. Gen., Richard A. Solomon and Donald L. Hardison, Attorneys, Department of Justice, John H. Wanner, General Counsel, Joseph B. Goldman, Deputy General Counsel, and O. D. Ozment, Associate General Counsel, Litigation and Research, Civil Aeronautics Board, Washington, D. C., on brief), for respondent.

James H. Bratton, Jr., Atlanta, Ga. (E. Smythe Gambrell, Harold L. Russell, Allison Wade, and Gambrell, Harlan, Russell, Moye & Richardson, Atlanta, Ga., on brief), for intervenor, Eastern Air Lines, Inc.

Macon M. Arthur, Washington, D. C. (H. Templeton Brown, and Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., on brief), for intervenor, United Air Lines, Inc.

Albert F. Beitel, Washington, D. C., for intervenor, Greensboro-High Point Airport Authority.

Before SOBELOFF, Chief Judge, and BRYAN and BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge.

This is an appeal from an order of the Civil Aeronautics Board directing the consolidation at Friendship Airport of trunk line services by Eastern and United Air Lines to the area adjacent to Greensboro, Winston-Salem and High Point, North Carolina.

The cities of Greensboro, High Point and Winston-Salem constitute a triangle in the Piedmont area of North Carolina within and around which is rapidly developing an industrial metropolitan complex of national significance. Friendship Airport lies within this triangle. It is approximately ten miles from Greensboro, nineteen from Winston-Salem, and thirteen from High Point. Prior to the issuance of the Board's order the air lines involved divided their services between the Smith Reynolds Airport at Winston-Salem and Friendship Airport, serving Greensboro and High Point. The order required the affected carriers to discontinue their trunk line service to Smith Reynolds Airport. However, the issue is not which airport can better serve the area but whether the job can be done by Friendship alone, because Smith Reynolds is clearly not convenient to the major portion of the territory. The Board reached the conclusion that the area should be served through Friendship alone. The petitioners, Airport Commission of Forsyth County, Board of Commissioners of Forsyth County, and the Winston-Salem Chamber of Commerce, disagree. Upon this appeal we are to review the order to determine if it was lawfully promulgated within the scope of the Board's authority under the Act and if it is supported by substantial evidence.

Specifically the petitioners raise two objections: First, that there was not substantial evidence to support the Board's findings in that the Board ignored the uncontradicted evidence in the record which demonstrated conclusively that the action of the Board would cause detrimental effects to the Winston-Salem area, outweighing any general benefits involved; second, that the offending order was based upon a newly developed policy "pronouncement" which was never published in the Federal Register in compliance with the Administrative Procedure Act.

Both of the air lines affected by the Board's order and the Greensboro-High Point Airport Authority, which operates Friendship Airport, have filed briefs in support of the Board's order.

Under the authority vested in it by the Federal Aviation Act the Board is charged with the duty to develop "an air-transportation system properly adapted to the present and future needs of the foreign and domestic commerce of the United States, of the Postal Service, and of the national defense", and "the promotion of adequate, economical and efficient service by air carriers". 72 Stat. 740; 49 U.S.C.A. § 1302. One means by which the Board carries out its policies as directed by the Act is its power to control air commerce by the issuance of Certificates of Public Convenience and Necessity to commercial air lines. 72 Stat. 754; 49 U.S.C.A. § 1371.[1] It is the duty of the Board in issuing these Certificates to weigh the rights of all parties concerned against broad considerations of paramount public interests in reaching its decisions. Here the Board found that the following benefits could be expected from consolidation: (1) savings in excess of $375,000.00 annually by the air

1. The practical effect of the order in this case was to amend the Certificates of Public Convenience and Necessity of Eastern Air Lines and United Air Lines effective October 29, 1961, by deleting "Greensboro-High Point" and "Winston-Salem" as separate points for service and substituting therefor the single point "Greensboro-High Point-Winston-Salem (to be served through Friendship Airport)".

lines involved; (2) improvements in the type and quality of service to be made available to the over-all community at Friendship Airport, including a new morning flight to New York, low cost coach service, and modern jet service; (3) benefits to the travelling public in a better pattern of connecting service between this area and other points, and the saving of elapsed time for through travellers by the elimination of one stop. Against these benefits the Board weighed the possible detriments to the Winston-Salem area, including the inconvenience to passengers and the increases in ground costs both to freight shippers and passengers. Balancing these detriments against the benefits which would result from the consolidation the Board concluded: "Moreover, in our view, the relative inconvenience to Winston-Salem passengers is outweighed by the economies and the over-all superior service which should be achieved by consolidation".

 It would be pointless to analyze in detail the more than six hundred pages of testimony by both laymen and experts supported by hundreds of pages of exhibits, including innumerable graphs and tables covering every aspect of this problem. The record includes both lay and expert opinion in favor of and opposed to the Board's order. Each side has marshalled facts to support its position at great length. We are unable to conclude from an examination of this record that the Board has abused its authority. Indeed there is substantial evidence from which the Board was justified in concluding that the order would result in over-all benefits not only to the area as a whole but to the area surrounding Winston-Salem which would exceed the inconvenience involved. In any event we must concede that Winston-Salem's injuries, real or fanciful, are not the sole determinative factor. If the Board is to comply with its statutory mandate these factors must be balanced against broad considerations of the paramount public interest in promoting and developing an air transportation system adapted to the present and future needs of the foreign and domestic commerce of the United States, of the postal service, and of the national defense.

We now come to the question of the so-called policy statement which was issued in the press release sometime after the Examiner's initial decision and prior to the final opinion of the Board issued on April 24, 1961. The essence of the statement was that the Federal Aviation Agency and the Board generally speaking favored the rendition of air line service to reasonably adjacent communities through one airport. We quote:

"* * * scheduled air line service into two separate airports that are reasonably adjacent often results in a deterioration of the quality of air line schedules to the area. In many cases, without substantial inconvenience to the air passengers, they could be served through a single airport, resulting in improved scheduling, better quality of service through the use of larger equipment, and an over-all improvement in air service to the area."

 A comparison of this statement with the statutory criteria laid down by the Congress for the operation of the Board makes it obvious that the policy enunciated in the press release is hardly more than a statement that the Board intends to discharge its statutory obligations by serving the public interests first. At most the statement is a recognition of the modification of prior existing policies in the light of technical changes which have taken place in the aircraft industry during recent years. In effect it was merely another way of stating the conclusions reached by the Trial Examiner that while separate service to the airports might have been justified in the past because of the use of aircraft seating relatively few persons, such reason no longer exists where service is provided by modern aircraft seating up to 114 passengers. It is interesting to note that the pronouncement did not emanate from the Board alone but was the joint statement of the Board

**188**

and the Chairman of the Federal Aviation Agency, who are required to cooperate in the development of the science of aviation in the United States. Its principal thrust was directed toward the use of federal money in the construction of new airports. It did not involve a rule which the public is required to obey or with which it is to avoid conflict. It was not an exercise of the rule making or adjudicatory function of the Civil Aeronautics Board which would come within the provisions of Section 3 of the Administrative Procedure Act, 5 U.S.C.A. § 1002, requiring its publication in the Federal Register. Rather it was an announcement in furtherance of the policy making functions of the Federal Aviation Agency in which it was expedient that the Board express its concurrence. It was intended as a general statement of policy to guide the public in future planning. Brownell v. Schering Corporation, 129 F.Supp. 879, 905 (D.C.N.J. 1955), Aff'd. 228 F.2d 624, (3 Cir., 1956), Cert. den. 351 U.S. 954, 76 S.Ct. 849, 100 L.Ed. 1477. Even if we should assume that the pronouncement required publication we cannot see that the failure to do so has injured the petitioners. The only penalty under Section 3 of the Administrative Act lies in the elimination of any requirement "to resort to the organization or procedure not so published". The so-called policy or pronouncement did not operate in and of itself to deny any rights to the petitioners. To adopt the petitioners' contention that the Board relied solely upon the policy expressed in the press release to the extent of ignoring the facts of the record would not only violate the rule against probing into the motives upon which the Board acted but would in fact directly conflict with the Board's solemn assurance as set forth in its order denying reconsideration. That the Board's opinion was based upon the facts and the issues raised by those facts is strengthened when we consider that both Winston-Salem and Greensboro-High Point were complaining of the inadequacy of their trunk line service. Both

contended that the traffic potential was underdeveloped to the detriment of the entire area. The Board concluded that there was little prospect for improvement in the near future so long as the carriers were required to use both airports. Nor could the Board consider only the complaints of these two airports for it found that the delay caused by the additional stop affected more than forty other cities and towns.

We find that the Board's order is based upon substantial evidence weighed against the statutory criteria laid down by the Congress for the guidance of the Board. There is no question of the authority of the Board to specify the one airport to serve the over-all area. City of Dallas v. Civil Aeronautics Board, 94 U.S.App.D.C. 175, 221 F.2d 501 (D.C. Cir., 1954). Certainly we cannot say that the decision constituted an abuse of discretion.

Affirmed.